J. S84040/18

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| LEON JOHNSON, | : | No. 1355 EDA 2016 |
| | : | |
| Appellant | : | |

Appeal from the Judgment of Sentence, December 16, 2015,
in the Court of Common Pleas of Philadelphia County
Criminal Division at Nos. CP-51-CR-0012563-2013,
CP-51-CR-0012702-2011, CP-51-CR-0012703-2011

BEFORE:  BENDER, P.J.E., OTT, J., AND FORD ELLIOTT, P.J.E.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:        **FILED FEBRUARY 11, 2019**

Leon Johnson appeals from the December 16, 2015 aggregate judgment of sentence of 10 to 20 years' imprisonment imposed after a jury found him guilty of burglary, criminal trespass, and theft by unlawful taking or disposition.[1]  After careful review, we affirm the judgment of sentence.

The trial court summarized the relevant facts of this case as follows:

> Kevin Slusarski is an independent contractor who lives with his wife [] in Philadelphia.  On September 19, 2013, his wife left their house at 7:15am, and he left their house at 8:15 am. Slusarski locked the front door before he left the house.  When he returned at 11:00 am, Slusarski opened his front door with a key and then went to the basement to obtain a few tools.  He was in his home for 5 minutes and standing in the first floor dining room when he heard a large loud noise

---

[1] 18 Pa.C.S.A. §§ 3502(a), 3503(a)(1), and 3921(a), respectively.

coming from the second floor. Believing that the noise must have come from his neighbor's house, Slusarski ignored the noise and went downstairs to the basement to get materials to paint his front porch. When he was in the basement, he heard loud footsteps on the first floor.

Slusarski went upstairs to investigate. When he reached the first floor, Slusarski observed [appellant] walking into the kitchen. [Appellant] had two bags on his shoulders. [Appellant] turned around, looked at Slusarski and then immediately started walking as fast as he could toward the front door. Slusarski was eight to ten feet from [appellant] and was able to see his entire face. Slusarski noted that [appellant] walked with a limp. Slusarski repeatedly yelled at [appellant], "What are you doing here?" In response, [appellant] walked out the front door. Slusarski called 911 and started to follow [appellant]. Slusarski stayed 15-20 feet behind [appellant] and followed him for two to three minutes. About a block from Slusarski's house, [appellant] dropped one of the two bags onto the street. [Appellant] kept walking and then went into the backyard of a row home. Slusarski did not follow [appellant] into the backyard. At trial, Slusarski identified [appellant] as the same person who was inside his house. He also used a photograph to identify the location at which [appellant] entered a backyard.

Slusarski was on the phone with a 911 dispatcher during the entire time he followed [appellant]. After [appellant] went into the backyard, the 911 dispatcher told Slusarski to go back to his house to meet police. About one minute after he returned to his house, Slusarski met with a police officer. He told the police officer that [appellant] dropped a gym bag about one block from his house and that the gym bag was a bag that he kept in a closet on the third floor of his house. Slusarski left his house to recover the gym bag that [appellant] dropped on the street. Inside the bag were two laptop computers, a digital camera, a digital voice recorder, several

> charging cords and a large amount of change. Slusarski immediately recognized all of the property as his property including the change, which he kept in a coffee can in his house.
>
> Slusarski returned to his house for a second time. He noticed that the window screen for the second floor bathroom was broken and laying on the bathroom floor. He also noticed that the third floor bedroom was ransacked. Slusarski then went to 3783 Cresson Street where he identified [appellant] as the person who he observed inside his house. He also observed a police officer pull an iPod out of [appellant]'s front pants pocket; Slusarski identified the iPod as his property. Slusarski testified that he never gave [appellant] permission to enter his house or to remove any of his property.

Trial court opinion, 9/2/16 at 1-3 (citations to notes of testimony omitted).

Appellant was subsequently arrested in connection with this incident and charged with burglary, criminal trespass, theft by unlawful taking, and receiving stolen property.[2] On June 22, 2015, the trial court conducted a **_voir dire_** of prospective jurors for appellant's trial. In response to the trial court's inquiries, one of the prospective jurors, Ebonye Williams, indicated that she knew the prosecutor in this case, Assistant District Attorney Jennifer Friend-Kelly ("ADA Friend-Kelly"). (Notes of testimony, 6/22/15 at 10.) After the trial court questioned Williams at length, appellant moved to strike Williams for cause. (**_Id._** at 36-43.) The trial court denied said motion after confirming with ADA Friend-Kelly that she did not recognize Williams from the jury pool until she was individually examined by the trial

---

[2] 18 Pa.C.S.A. § 3925(a).

- 3 -

court. (*Id.* at 43-44.) Thereafter, appellant proceeded to a jury trial and was ultimately found guilty of burglary, criminal trespass, and theft by unlawful taking on June 24, 2015. As noted, appellant was sentenced to an aggregate term of 10 to 20 years' imprisonment on December 16, 2015. On December 23, 2015, appellant filed a post-sentence motion for reconsideration of his sentence, which was denied by operation of law on April 22, 2016. *See* Pa.R.Crim.P. 720(B)(3)(a) (stating, "[i]f the judge fails to decide the motion within 120 days, or to grant an extension as provided in paragraph (B)(3)(b), the motion shall be deemed denied by operation of law."). This timely appeal followed on April 25, 2016.

On April 27, 2016, the trial court directed appellant to file a concise statement of errors complained of on appeal, in accordance with Pa.R.A.P. 1925(b). On May 18 and July 13, 2016, appellant filed motions requesting an extension of time to file his Rule 1925(b) statement upon receipt of the notes of testimony from the June 22, 2015 *voir dire*. The trial court did not rule on appellant's motions and subsequently filed a Rule 1925(a) opinion on September 2, 2016. Thereafter, on January 18, 2017, this court granted appellant's petition to remand the case to the trial court so that the *voir dire* notes of testimony could be transcribed, and ordered him to file a Rule 1925(b) statement within 21 days of receipt. (*See per curiam* order, 1/18/17.) Appellant timely complied on June 5, 2018. The trial court filed a supplemental Rule 1925(a) opinion on August 2,

2018, rejecting appellant's argument that its failure to strike Williams from the jury constituted an abuse of discretion. (**See** supplemental Rule 1925(a) opinion, 8/2/18 at 4-5.)

Appellant raises the following issue for our review:

> Did not the [trial] court abuse its discretion and violate appellant's state and federal constitutional rights to a fair trial and due process of law when it failed to strike "for cause" a prospective juror whose answers during **voir dire** demonstrated that she would have difficulty being fair and impartial in a case involving the prosecuting attorney as she had previously worked with the prosecutor (in a non-legal setting) for three years?

Appellant's brief at 3.

Our standard of review in assessing whether a trial court erred in declining to strike a prospective juror for cause is well settled:

> A trial court's decision regarding whether to disqualify a juror for cause is within its sound discretion and will not be reversed in the absence of a palpable abuse of discretion. In determining if a motion to strike a prospective juror for cause was properly denied our Court is guided by the following precepts:
>
> > The test for determining whether a prospective juror should be disqualified is whether he is willing and able to eliminate the influence of any scruples and render a verdict according to the evidence, and this is to be determined on the basis of answers to questions and demeanor. . . . It must be determined whether any biases or prejudices can be put aside on proper instruction of the court. . . . A challenge for cause should be granted when the prospective juror

> has such a close relationship, familial, financial, or situational, with the parties, counsel, victims, or witnesses that the court will presume a likelihood of prejudice or demonstrates a likelihood of prejudice by his or her conduct or answers to questions.

*Commonwealth v. Briggs*, 12 A.3d 291, 332-333 (Pa. 2011) (citations omitted), *cert. denied*, 565 U.S. 889 (2011).

Instantly, our review of the record reveals that Williams' relationship with ADA Friend-Kelly was not of such a nature that a presumption of prejudice was warranted, nor did her answers during *voir dire* indicate that her ability to serve as a fair and impartial juror had been prejudiced. First, it is evident Williams did not have a "close [] familial, financial, or situational" relationship with ADA Friend-Kelly. *Id.* at 333; *see also Commonwealth v. Cox*, 983 A.2d 666, 682 (Pa. 2009). On the contrary, Williams' testimony only revealed that she had previously worked with ADA Friend-Kelly before she became an attorney, had not seen her in "years," and was only familiar with her through the online professional networking service, LinkedIn. Specifically, Williams testified as follows:

> THE COURT: You indicated you know someone, who do you know?
>
> THE WITNESS: Ms. Friend-Kelly.
>
> THE COURT: How do you know Ms. Friend-Kelly?
>
> THE WITNESS: We worked together for a couple years.

> THE COURT: In what capacity?
>
> THE WITNESS: I was property manager. She was the intern at the housing authority.
>
> THE COURT: When was the last time you saw Ms. Friend-Kelly?
>
> THE WITNESS: Years.
>
> . . . .
>
> THE COURT: You also indicated that you or someone close to you works in law enforcement or as a police officer, who were you thinking of?
>
> THE WITNESS: My uncle is a police officer.
>
> THE COURT: Anyone else that you were thinking of?
>
> THE WITNESS: No.
>
> THE COURT: When you were answering that question were you thinking of Ms. Friend-Kelly or was she so far out of your mind?
>
> THE WITNESS: No.
>
> THE COURT: Did you know she was a lawyer?
>
> THE WITNESS: I did, yes.
>
> THE COURT: Did you know where she worked?
>
> THE WITNESS: Only through our LinkedIn connection.

Notes of testimony, 6/22/15 at 36-37, 41-42.

Moreover, at no point during the ***voir dire*** did Williams' "conduct or answers" indicate that she could not be impartial. ***See Briggs***, 12 A.3d at 333; ***see also Cox***, 983 A.2d at 682. Rather, Williams stated unequivocally

that she was able to be fair and impartial and would not allow any extraneous matters to influence her:

> THE COURT: Anything about the fact that Ms. Friend-Kelly would be the prosecutor in this case that you think would impact your ability to be fair and impartial?
>
> THE WITNESS: No.
>
> . . . .
>
> THE COURT: Ms. Williams, we all come from different backgrounds and life experiences, is there anything that we haven't talked about today that you think would impact your ability to be fair and impartial?
>
> THE WITNESS: No.

Notes of testimony, 6/22/15 at 37, 42.

Based on the foregoing, we discern no abuse of the trial court's discretion in denying appellant's motion to strike Williams from the jury with cause. Accordingly, we affirm appellant's December 16, 2015 judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/11/19