J-S35044-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| KURT ALLYN SHEERIN | : | |
| | : | |
| Appellant | : | No. 21 MDA 2025 |

Appeal from the PCRA Order Entered August 8, 2024
In the Court of Common Pleas of Cumberland County Criminal Division at
No(s): CP-21-CR-0000900-2020

BEFORE: OLSON, J., MURRAY, J., and LANE, J.

MEMORANDUM BY LANE, J.: **FILED: NOVEMBER 12, 2025**

Kurt Allyn Sheerin ("Sheerin") appeals from the order denying his first petition filed pursuant to the Post Conviction Relief Act ("PCRA").[1] We affirm.

On October 5, 2019, Sheerin, an inmate at the State Correctional Institution at Camp Hill ("SCI Camp Hill"), was in line at the medical dispensary, waiting to receive his medication. Sheerin became involved in a verbal dispute with Corrections Officer Craig Crankfield ("Officer Crankfield"), who decided to place Sheerin in handcuffs. A physical altercation ensued, and Seargeant James Hunsberger ("Sergeant Hunsberger") and another corrections officer ("CO") arrived to assist Officer Crankfield in restraining Sheerin. During the altercation, Sheerin struck Officer Crankfield in the head with his head and elbow, causing a concussion, and he bit off the tip of

_____

[1] *See* 42 Pa.C.S.A §§ 9541-9546.

Sergeant Hunsberger's finger. Both Officer Crankfield and Sergeant Hunsberger required medical attention, and each missed three months of work.

The Commonwealth charged Sheerin with multiple offenses, including two counts of aggravated assault of an officer in the performance of his duty.[2] Attorney Jacob Jividen, Esquire ("Trial Counsel") represented Sheerin from his preliminary hearing through his jury trial. Trial Counsel's primary defense at trial was that Sheerin was acting in self-defense in response to an unprovoked attack by the COs.

Officer Crankfield testified at trial to the following. His assignment at the time of the incident was to supervise the inmates as they waited in line at the dispensary. *See* N.T., 9/1/21, at 59. The dispensary's computer system malfunctioned, bringing the line of thirty to forty inmates to a halt. *See id*. at 61-62, 64. Sheerin became angry at the delay and exited the line and approached Officer Crankfield. *See id*. at 62. Officer Crankfield instructed Sheerin to return to the line and wait his turn. *See id*. at 62-63. After the second malfunction, Sheerin again exited the line, and Officer Crankfield stated, "If you don't get back in line, I am going to spray you" with pepper spray. *Id*. at 63.

Sheerin returned to the line but quickly left it again and said to Officer Crankfield, "[D]o you know what, mother fucker, why don't we just go back

---

[2] *See* 18 Pa.C.S.A. § 2702(a)(3).

to my cell and talk[?]" *Id*. at 64, 66. Based on his experience, Officer Crankfield interpreted Sheerin's statement as a threat of physical violence. *See id*. at 64.

Officer Crankfield then instructed Sheerin to "cuff up," which meant to place his hands behind his back for handcuffing. *See id*. at 64, 66. At this point, Sergeant Hunsberger and another CO were by Officer Crankfield's side to assist him in restraining Sheerin. *See id*. at 64. Instead of keeping his hands still to allow handcuffing, Sheerin raised his arms and freed himself from Officer Crankfield's grip. *See id*. at 66-67. Officer Crankfield took Sheerin to the ground, and one of the other COs dispensed pepper spray at Sheerin. *See id*. at 67-68.

Sheerin continued to resist while on the ground. *See id*. He headbutted Officer Crankfield to the side of the head and elbowed him in the face. *See id*. at 69-71. Officer Crankfield was diagnosed with a concussion and suffered migraines as a result of the incident. *See id*. at 74-75.

Sergeant Hunsberger testified as follows. He was escorting a group of inmates to the dispensary when he saw Officer Crankfield and Sheerin "face-to-face arguing." *Id*. at 106-07. Sergeant Hunsberger approached with his pepper spray in his hand. *See id*. at 107. After Officer Crankfield told Sheerin to "cuff up," Sheerin turned around and swung his fist at Officer Crankfield. *See id*. at 109. Sergeant Hunsberger then sprayed Sheerin with pepper spray and assisted Officer Crankfield and another CO in taking Sheerin to the ground. *See id*. at 110.

Once on the ground, Officer Crankfield and the other CO attempted to restrain Sheerin's body, while Sergeant Hunsberger attempted to control his neck and head. *See id*. at 110-11. Sergeant Hunsberger applied a "pressure point compliance technique" by forcefully pressing his thumb down on Sheerin's neck. *See id*. at 111-12. Sheerin then turned his head and bit off the tip of Sergeant Hunsberger's right pinky finger. *See id*. at 112. Right after doing so, Sheerin stated, "I got your finger, mother fucker. How does that feel?" *Id*. at 113. Sergeant Hunsberger lost the tip of the bone of his finger and his fingernail as a result of the incident. *See id*. at 116.

Sheerin called Carson Sampsell ("Sampsell"), who testified as follows. Sampsell was also an inmate at SCI Camp Hill, and he was behind Sheerin in the medical dispensary line on October 5, 2019. *See id*. at 186-88. Sampsell explained that there are generally two lines of inmates to enter the dispensary, but on that date only one line was open. *See id*. at 188.

Sheerin was waiting in one of the lines and walked into the area where he would receive his medication, as it was his turn. *Id*. A CO asked him, "[W]here are you going and what do you think you are doing[?]" *Id*. Sheerin responded that he was getting his medication, and said, "[W]hy do you have to speak to me like that[?]" *Id*. at 189. The CO responded, "[Y]ou are going to wait your fuckin turn" and instructed Sheerin to "cuff the fuck up." *Id*.

Sheerin asked why the CO was handcuffing him, and the CO responded by "slamm[ing him] against a brick wall face first." *Id*. The CO then placed Sheerin in a headlock and took him to the ground, with the assistance of

another CO who had run over to assist. *See id*. Once on the ground, both COs began punching Sheerin, and one of the COs pepper sprayed him. *See id*. at 190-91.

Sheerin also described the October 5, 2019 incident during his trial testimony. Like Sampsell, Sheerin stated that he was polite and never struck the COs, and instead Officer Crankfield initiated the violent interaction. *See* N.T., 9/2/21, at 211-13, 219. After instructing Sheerin to "turn the fuck around and cuff up," Officer Crankfield struck him in the head with a pepper spray cannister, slammed him against the wall, and took him to the ground. *Id*. at 211-13.

Sheerin testified that, once on the ground, Seargeant Hunsberger "slam[med Sheerin's] face multiple times on the ground" and pressed his thumb on the pressure point behind Sheerin's jaw. *Id*. at 212, 217. After this did not provoke a response from Sheerin, Sergeant Hunsberger "stuck his pinky into [Sheerin's] mouth while his thumb was still hooked behind [Sheerin's] jaw and pulled [his] face." *Id*. at 218. This caused Sheerin intense pain and "shocked" and "scared" him, "so [he] bit down." *Id*. He immediately spit the tip of Sergeant Hunsberger's finger out. *See id*.

The jury convicted Sheerin of two counts of aggravated assault of an officer in the performance of his duty. Sheerin filed a notice of appeal, and this Court affirmed his judgment of sentence on July 26, 2022. *See Commonwealth v. Sheerin*, 283 A.3d 399 (Pa. Super. 2022) (unpublished

memorandum). He did not file a petition for allowance of appeal in our Supreme Court.

On October 26, 2022, Sheerin filed a timely *pro se* PCRA petition.[3] The PCRA court appointed counsel, and PCRA counsel filed an amended petition. Sheerin's amended petition raised an ineffective assistance of counsel claim based on Trial Counsel's alleged failure to call Tristan Mutzabaugh ("Mutzabaugh"), another SCI Camp Hill inmate, as a witness at trial.[4]

The PCRA court held an evidentiary hearing on May 16, 2024, at which Mutzabaugh, Trial Counsel, and Sheerin testified. Mutzabaugh testified to the

---

[3] Sheerin's judgment of sentence became final on August 25, 2022, the last day upon which he could have filed a timely petition for allowance of appeal with our Supreme Court. *See* 42 Pa.C.S.A. § 9545(b)(3) (providing that judgment of sentence becomes final under the PCRA at the conclusion of direction review "or at the expiration of time for seeking the review"); *see also* Pa.R.A.P. 1113(a) (providing that petition for allowance of appeal be filed within thirty days of judgment). As Sheerin filed his PCRA petition within one year of August 25, 2022, the petition was timely. *See* 42 Pa.C.S.A § 9545(b)(1) (providing that petitioner must file petition within one year of date judgment of sentence becomes final).

[4] The amended petition also alleged that Trial Counsel was ineffective for failing to present Officer Crankfield's medical and personnel records and Sheerin's medical records. At the PCRA hearing, PCRA counsel only elicited testimony regarding Trial Counsel's decision to not introduce Sheerin's medical records. The PCRA court found that the medical records would have been cumulative of other evidence and Trial Counsel was therefore not ineffective. *See* PCRA Court Opinion, 8/7/24, at 2. While Sheerin raised Trial Counsel's alleged ineffectiveness for not presenting Sheerin's medical records in his Pa.R.A.P. 1925(b) concise statement, he has abandoned this claim by not presenting any argument regarding the PCRA court's determination in his appellate brief. *See Commonwealth v. Gould*, 187 A.3d 927, 934 n.7 (Pa. Super. 2018) (stating that an appellant who raises an issue in his Pa.R.A.P. 1925(b) statement but then presents no argument on the issue in his appellate brief has abandoned the issue).

following. He was Sheerin's cellmate and was directly in front of him in the medical dispensary line on October 5, 2019. *See* N.T., 5/16/24, at 5-7. While they were waiting in line, Mutzabaugh allowed Sheerin to go in front of him. *See id*. at 7. In response, the CO stationed in the dispensary said, "Yo, I ain't fucking tell you to go yet. Get the fuck back in line." *Id*. at 8. The CO then pushed Sheerin in the face with both hands, smashing his head on the concrete wall. *See id*. at 9-11.

The CO called for backup, and several COs took turns punching and kicking Sheerin while he was on the ground. *See id*. at 10-11. One of the COs stuck his index finger in Sheerin's mouth "like he had a fish hook" and "pull[ed Sheerin's] head off the ground so that they could get him in a choke hold." *Id*. at 9, 12. Mutzabaugh heard Sheerin biting off the tip of the finger, and the CO shouting, "My finger[.]" *Id*. at 9. At no point during the altercation did Mutzabaugh observe Sheerin react violently toward any of the COs. *See id*. at 11-13.

Mutzabaugh resided in New Bloomfield, Perry County at the time of Sheerin's September 2021 trial. *See id*. at 14-15. Mutzabaugh spoke with Trial Counsel by telephone several times in the months prior to the trial, and he related his account of the October 5, 2019 incident to Trial Counsel. *See id*. at 14-15. Trial Counsel informed Mutzabaugh that "he would call [him] back with a trial date," but Mutzabaugh "never heard from him." *Id*. at 15-16. Mutzabaugh denied exchanging text messages with Trial Counsel, and he did not recall Trial Counsel offering to pay for transportation to Cumberland

County. *See id*. at 18-19. Mutzabaugh indicated that, if Trial Counsel had informed him of the trial date, he would have willingly testified at Sheerin's trial. *See id*. at 16, 20-22.

Trial Counsel testified to the following at the PCRA hearing. He was aware of Mutzabaugh and that he could provide potentially beneficial testimony to Sheerin's claim that he acted in self-defense. *See id*. at 28-29. Trial Counsel and Sheerin "had always planned on [Mutzabaugh] testifying at trial." *Id*. at 29. Trial Counsel first spoke with Mutzabaugh by telephone in the summer of 2020, following his release from prison. *See id*. at 30. Trial Counsel and Mutzabaugh had two more phone conversations during the summer of 2021, wherein they reviewed Mutzabaugh's testimony. *See id*. at 31-33. However, in the months leading to trial, Trial Counsel developed "concerns" that Mutzabaugh may not appear as he "was becoming less and less reliable," "more reluctant" to discuss the case, and like a "different person." *Id*. at 36, 39. Trial Counsel had concerns that Mutzabaugh had resumed drug use based on his conversations with Sheerin. *See id*. at 36.

Once Trial Counsel received notice of the week when trial would start, he placed several calls to Mutzabaugh, but Mutzabaugh "stopped answering his phone." *Id*. at 33-35. Trial Counsel sent several text messages to Mutzabaugh during the week of trial requesting his attendance. *See id*. at 35, 47-48. Mutzabaugh responded to one text message, stating that he did not have a ride to the courthouse. *See id*. at 48. Trial Counsel sent a message after the first day of trial that he "could reimburse [Mutzabaugh] for

travel, bus or Uber or whatever" if he showed up the next day to testify, but Mutzabaugh did not respond. *Id*. at 48-49 (unnecessary capitalization omitted).

Trial Counsel discussed the possibility of subpoenaing Mutzabaugh with Sheerin. *See id*. at 35-37. However, Trial Counsel believed that Mutzabaugh's testimony might not be "help[ful]" if they "brought him [to court] in handcuffs." *Id*. at 37. Trial Counsel further felt that Mutzabaugh would not have had "all that much more to add" after Sampsell, who "ended up being a fantastic witness." *Id*. Trial Counsel recalled telling Sheerin mid-trial that they did not "need" Mutzabaugh and should proceed in presenting their defense without him. *Id*. at 50. Sheerin agreed with Trial Counsel's assessment. *See id*.

Sheerin testified at the PCRA hearing that he believed Mutzabaugh would appear to testify until Trial Counsel showed him the text message exchange on the second day of trial. *See id*. at 56. According to Sheerin, he asked Trial Counsel to subpoena Mutzabaugh, and Trial Counsel indicated that "it wasn't a good idea" to bring Mutzabaugh to court "in handcuffs." *Id*. at 57. Sheerin stated he deferred to Trial Counsel's strategic decision, but he would have preferred to have subpoenaed Mutzabaugh. *See id*. at 57, 60. Sheerin acknowledged that he expressed concerns to Trial Counsel that Mutzabaugh had begun using drugs again, but stated he had no personal knowledge whether Mutzabaugh had done so. *See id*. at 58-59.

On August 7, 2024, the PCRA court entered an order and accompanying opinion denying Sheerin's petition. As relevant here, the PCRA court found that Mutzabaugh was not willing to appear at trial and Trial Counsel was not ineffective for not seeking to compel Mutzabaugh's testimony. **See** PCRA Court Opinion, 8/7/24, at 2. This appeal followed.[5] Sheerin complied with the PCRA court's order to file concise statements of errors complained of on appeal pursuant to Pa.R.A.P. 1925, and the PCRA court issued a statement indicating that it relied on its earlier opinion.

Sheerin raises the following issue on appeal: "Whether the [PCRA c]ourt erred in holding that [T]rial [C]ounsel's decision to not subpoena . . . Mutzabaugh was a reasonable strategic decision." Sheerin's Brief at 4.

On appeal from the grant of PCRA relief, our review "is limited to examining whether the PCRA court's determination is supported by the evidence of record and whether it is free of legal error." **Commonwealth v. Agnew**, 299 A.3d 1001, 1005 (Pa. Super. 2023) (citation omitted). The PCRA court's factual findings and credibility determinations are binding when the record supports them. **See Commonwealth v. Small**, 238 A.3d 1267, 1280 (Pa. 2020). However, we review the PCRA court's legal conclusions *de novo*. **See id**. We confine our review to the findings of the PCRA court and the

_____

[5] Sheerin did not initially file a timely notice of appeal of the August 7, 2024 order. On December 30, 2024, Sheerin, through counsel, filed a motion for leave to file a notice of appeal *nunc pro tunc*. The PCRA court granted the motion, and Sheerin filed a notice of appeal on January 3, 2024.

evidence of record, which we view in the light most favorable to the party who prevailed below. *See id*.

In assessing an ineffective assistance of counsel claim under the PCRA, we presume that counsel has rendered effective assistance. *See Commonwealth v. Washington*, 269 A.3d 1255, 1263 (Pa. Super. 2022) (*en banc*). To overcome the presumption, the petitioner must show that: "(1) the underlying claim is of arguable merit; (2) that counsel had no reasonable strategic basis for his or her action or inaction; and (3) but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different." *Id*. (citation omitted). The defendant must satisfy all three prongs of this test to obtain relief under the PCRA. *See id*.

"A defense attorney's failure to call certain witnesses does not constitute *per se* ineffectiveness." *Commonwealth v. Cox*, 983 A.2d 666, 693 (Pa. 2009). To establish that defense counsel was ineffective for failing to call a witness at trial, the PCRA petitioner must demonstrate that:

> (1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew of, or should have known of, the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the testimony of the witness was so prejudicial as to have denied the defendant a fair trial.

*Commonwealth v. Medina*, 209 A.3d 992, 998 (Pa. Super. 2019) (citation omitted).

Sheerin asserts he established the first three criteria for demonstrating Trial Counsel's ineffectiveness, as Mutzabaugh "clearly existed and was available" and Trial Counsel spoke with him several times prior to trial. Sheerin's Brief at 12. With regard to the PCRA court's finding that Mutzabaugh was not willing to testify, Sheerin contends that this determination lacks support in the record. Sheerin avers that Trial Counsel's testimony showed that the only reason Mutzabaugh did not voluntarily appear was that he lacked transportation from his home in Perry County to Cumberland County. While Mutzabaugh did not respond to Trial Counsel's text message offering to pay for transportation to the courthouse, Sheerin argues that "[a] lack of response is not dispositive of whether . . . Mutzabaugh was unwilling to testify." *Id*. at 13.

Sheerin argues that Trial Counsel's testimony also failed "to support his belief that . . . Mutzabaugh would not [have been] helpful for the defense if served with a subpoena." *Id*. Sheerin submits that a "subpoena would have only served to reinforce the importance of . . . Mutzabaugh's testimony" and provided "the means by which to get . . . Mutzabaugh to court through assistance of the trial court." *Id*. at 13-14.

Sheerin contends that the absence of Mutzabaugh's testimony was prejudicial where "Mutzabaugh was the sole witness (other than [Sheerin]) who would have testified that [Sergeant Hunsberger] put his finger in [Sheerin's] mouth and used it to pull back on [Sheerin's] head in a fishhook fashion." *Id*. at 14. Sheerin asserts that Mutzabaugh's testimony would have

"supported [Sheerin's] claim of self-defense by showing that" the act of biting Sergeant Hunsberger's finger "was solely a visceral reaction to [Sergeant Hunsberger's] action." *Id*.

The PCRA court concluded that Sheerin "indisputably established" some elements of his ineffectiveness claim but the "central question[s]" that remained were "whether Mutzabaugh was willing to appear and, if not, whether it would have been sensible to compel his presence." PCRA Court Opinion, 8/7/24, at 2. The court "answer[ed] in the negative on both counts," reasoning as follows:

> [Trial Counsel] spoke with Mutzabaugh in the year leading up to trial, confirming his willingness to testify. He informed Mutzabaugh once the time for trial had been set. As those dates approached, however, [Trial Counsel] noticed a change, with Mutzabaugh becoming more evasive. During trial week itself, [Trial Counsel] attempted to contact Mutzabaugh several times, without success, concluding that the witness had changed his mind and that whatever testimony might be extracted by compulsion would not inure to [Sheerin's] benefit. In short, [the court found Trial Counsel's] testimony to be far more credible than . . . Mutzabaugh's.

*Id*. The PCRA court therefore determined that Trial Counsel's strategic decision to not subpoena Mutzabaugh was "eminently reasonable." *Id*.

Upon review, we conclude the record supports the PCRA court's denial of relief. *See Agnew*, 299 A.3d at 1005. Initially, we emphasize that the PCRA court found Trial Counsel more credible than Mutzabaugh, a determination that finds support in the record and is therefore binding on this Court. *See Small*, 238 A.3d at 1280. Trial Counsel testified that, while

- 13 -

Mutzabaugh initially expressed his willingness to testify in Sheerin's defense, he became "more reluctant" and "less reliable" as the trial date approached. N.T., 5/16/24, at 36, 39, 45. After the first day of trial, when Trial Counsel requested Mutzabaugh testify the following day, Mutzabaugh stated that he did not have transportation to the courthouse. However, when Trial Counsel offered to reimburse travel expenses, Mutzabaugh ceased communicating with Trial Counsel. *See id*. at 48-49. Viewing this testimony in the light most favorable to the Commonwealth, the evidence supports the PCRA court's finding that Mutzabaugh was not "willing to testify for the defense." *Medina*, 209 A.3d at 998 (citation omitted); *see also Small*, 238 A.3d at 1280.

Furthermore, we discern no grounds to disturb the PCRA court's conclusion that Trial Counsel made a reasonable strategic decision to not request a subpoena for Mutzabaugh's testimony. Trial Counsel explained that he decided not to subpoena because: (1) Mutzabaugh may not have provided beneficial testimony if they "brought him [to court] in handcuffs;" and (2) Mutzabaugh's testimony did not appear to be necessary after Sampsell's effective rebuttal of Officer Crankfield's and Sergeant Hunsberger's accounts. N.T., 5/16/24, at 37, 50. In light of Trial Counsel's detailed testimony regarding the efforts he undertook to procure Mutzabaugh's voluntary appearance, as well as his concerns relating to Mutzabaugh's changed demeanor and potential resumption of drug use, the evidence clearly supported the PCRA court's finding that Trial Counsel had a reasonable basis to not subpoena Mutzabaugh.

For the foregoing reasons, we conclude Sheerin did not prove that Mutzabaugh was willing to testify, a necessary element to prove his claim that Trial Counsel was ineffective for not calling Mutzabaugh as a witness. **See Medina**, 209 A.3d at 998. Additionally, Sheerin did not demonstrate that Trial Counsel lacked a reasonable strategic basis for his decision to not subpoena Mutzabaugh's testimony. **See Washington**, 269 A.3d at 1263. Thus, Sheerin's appellate issue merits no relief, and we affirm the denial of his PCRA petition.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 11/12/2025